# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche M. Manning | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 09 CV 5707 | **DATE** | September 1, 2011 |
| **CASE TITLE** | *Dionne Michelle Williams-Green v. J. Alexander's Restaurants, Inc.* | | |

**DOCKET ENTRY TEXT**

The plaintiff's motion for class certification [48-1] is granted in part and denied in part as detailed below. The defendant's motion for summary judgment [85-1] is granted in part and denied in part as detailed below. The plaintiff's motion for summary judgment [91–1] is denied. The parties shall report for a status hearing before this court on October 20, 2011, at 11:00 a.m.

■ [ For further details see text below.] Docketing to mail notices.

00:00

## STATEMENT

This dispute involves allegations by plaintiff Dionne Michelle Williams-Green that her employer, J. Alexander's Restaurants, Inc., violated stage wage laws by operating an improper tip pool and by failing to pay the proper amount of overtime pay. Williams-Green has filed a motion for class certification, and both parties have filed motions for summary judgment. *See* Federal Rule of Civil Procedure 56. For the reasons that follow, the motion for class certification is granted, the defendant's motion for summary judgment is granted in part and denied in part, and the plaintiff's motion for summary judgment is denied.

The court has subject-matter jurisdiction over this dispute because the parties are diverse (J. Alexander's is a Tennessee corporation with its principal place of business in Tennessee) and because calculations set out in the defendant's notice of removal reasonably suggest that damages may exceed $5,000,000. *See* 28 U.S.C. § 1332(d).

## BACKGROUND

The following facts are undisputed except where noted. Defendant J. Alexander's operates restaurants across the country, including three in Illinois. Between November 2006 to December 2009, plaintiff Dionne Michelle Williams-Green worked as a server at two of those locations, one in Chicago and one in Northbrook.

When J. Alexander's hired Williams-Green, it informed her that like other servers, she would receive less than the full minimum wage because most of her money would come from tips. It also told her that it operates a tip pool, under which a portion of the tips earned by servers and bartenders is re-distributed to non-tipped staff members such as hosts and food runners. Under the tip pool, tipped employees contribute a tip share in the amount of 3% of their sales, which is collected by a manager at the end of their shift. Non-tipped staff then receive tips from the tip pool. A restaurant may take what is known as a tip credit, which allows it to pay its tipped employees less than the full minimum wage, as long as those employees receive enough in tips to cover the difference.

**STATEMENT**

The parties dispute whether the entire tip pool was distributed to the non-tipped staff each day, or whether J. Alexander's improperly retained a portion of the tip pool. Williams-Green testified at her deposition that five managers—Ryan Marks, Kimberly Lashawzia, Jason Benish, Alexandria Demas, and Cory Milner—told her that the tip pool was split three ways between hosts, food runners, and that J. Alexander's retained a portion. According to Williams-Green, Marks told her that J.Alexander's retained a third of the 3% servers and bartenders had contributed to the pool.

J. Alexander's disputes that it kept any portion of the tip pool, and stresses that its corporate policy required that 100% of the tip pool be distributed to employees. J. Alexander's has also identified deposition testimony or declarations from Benish, Demas, and Milner in which those managers denied telling Williams-Green or any employee that J. Alexander's retained a portion of the tip pool.

In further support of its position, J. Alexander's director of information systems, Jason Parks, compiled summaries of tip pool distributions at the restaurant's three Illinois locations. Parks sampled each restaurant during different two-week pay periods between 2002 and 2010. He sampled a total of 10 pay periods at the Chicago location, 11 pay periods at the Northbrook location, and 12 pay periods at the Oak Brook location. The summaries show that during the sampled periods, the Chicago location distributed to employees a total of $7.80 more from the tip pool than had been contributed by tipped employees. However, during 4 of the 10 pay periods sample, J. Alexander's failed to distribute all of the money it had collected for the tip pool. At the Northbrook location, J. Alexander's failed to distribute all of the money it had collected for the tip pool for 7 of the 11 pay periods sampled, for a total shortage of $244.35. At the Oak Brook location, J. Alexander's failed to distribute all of the tip pool 10 of the 12 weeks sampled, for a total shortage of $837.89.

In addition to her claim that J. Alexander's retained a portion of the tip pool, Williams-Green alleges that J.Alexander's failed to compensate her for work she performed off-the-clock. Williams-Green testified that she always arrived to work one hour early. She testified that sometimes she would read or do crossword puzzles during that hour, but 3-4 times a week a manager would ask her to help perform "side work" to prepare the restaurant for opening. She contends that on some occasions, she would perform the work without telling her manager that she had not yet clocked in. On those occasions on which she would tell the manager that she had not yet clocked in, the manager would respond that she should clock in, or would offer to compensate her with lunch. She also testified that she never reported to anyone that she had worked off-the-clock, and never asked to be compensated for any work off-the-clock.

Finally, Williams-Green alleges that J. Alexander's failed to pay her time-and-a-half for her overtime. J. Alexander's admits that it had failed to aggregate the hours of employees who had worked at two different locations during the same week. It contends that as a result, it did not realize those employees' hours totaled more than 40 during a single week and, therefore, failed to pay them the correct rate for their overtime. After Williams-Green filed this suit, J. Alexander's discovered its error and sent checks to the affected employees in the amount of the overtime they were due plus interest calculated at the rate of 2% per month.

Williams-Green quit J. Alexander's in April 2009, after obtaining a job with Amtrak. She then filed what purports to be a class action lawsuit on August 4, 2009, seeking to represent two subclasses of plaintiffs: (1) employees who participated in the tip pool, and (2) employees who were improperly paid for overtime. The complaint consists of two counts. Count I alleges a claim under the Illinois Wage Payment and Collection Act, which Williams-Green alleges J. Alexander's violated by paying her sub-minimum wages while operating an invalid tip pool and by failing to properly pay for her overtime. Count II alleges a claim under the Illinois Minimum Wage Act, which Williams-Green alleges that J. Alexander's also violated by paying

**STATEMENT**

her a subminimum wage while operating an invalid tip pool.

Before the court are a motion for class certification filed by Williams-Green, as well as cross-motions for summary judgment. In the motion for class certification, William-Green seeks certification on her claim that J. Alexander's improperly paid employees a sub-minimum wage.

In J. Alexander's motion for summary judgment, it seeks judgment on the three issues raised by Williams-Green in this case: (1) that J. Alexander's was not entitled to take a tip credit because it shared in the proceeds of its tip pool; (2) that J. Alexander's failed to properly compensate employees for their overtime; and (3) that J. Alexander's failed to compensate Williams-Green for work she performed off-the-clock. The final issue is not alleged in the complaint but, rather, appears to be an allegation William-Green first leveled during her deposition.

In Williams-Green's motion for summary judgment, she seeks partial summary judgment limited to liability on the same three issues identified in J. Alexander's motion for summary judgment.

## ANALYSIS

## I. SUMMARY JUDGMENT STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Valenti v. Qualex, Inc.*, 970 F.2d 363, 365 (7th Cir. 1992), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Moreover, a court should grant a motion for summary judgment only when the record shows that a reasonable jury could not find for the nonmoving party. *See Valenti*, 970 F.2d at 365; *see also Anderson*, 477 U.S. at 248.

Thus, in order to withstand a motion for summary judgment, the nonmoving party must show that a dispute about a genuine issue of material fact exists. *See Anderson*, 477 U.S. at 248. The nonmoving party may not merely rest upon the allegations or details in his pleading, but instead, must set forth specific facts showing there is a genuine issue for trial. *See Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

## II. J. ALEXANDER'S MOTION FOR SUMMARY JUDGMENT [85-1]

### A. Propriety of the Tip Credit

First, J. Alexander's seeks summary judgment on Williams-Green's claim that it was not entitled to a tip credit and, therefore, failed to fully compensate her as required under the Illinois Wage Payment and Collection Act or the Illinois Minimum Wage Act. Under the Illinois Wage Payment and Collection Act, an employer must pay an employee for time worked. *See* 820 Ill. Comp. Stat. 115/1 *et seq.*; *Miller v. Kiefer Specialty Flooring, Inc.*, 739 N.E.2d 982, 986 (Ill. App. Ct. 2000) ("The purpose of the Act is to provide employees with a cause of action for the timely and complete payment of earned wages or final compensation without retaliation from employers."). Meanwhile, the Illinois Minimum Wage Act establishes the minimum hourly rate employers must pay. *See* 820 Ill. Comp. Stat. 105/4(a)(1).

However, for employees who are customarily tipped, an employer may take what is called a tip credit, which

**STATEMENT**

allows them to pay those employees only 60% of the minimum wage as long as the employer can demonstrate that the employee's tips made up the remaining 40% of the minimum wage and that the employer did not retain any of the tips. *See* 820 Ill. Comp. Stat. 105/4(c); *Gillis v. Twenty Three East Adams Street Corp.*, No. 04 CV 4012, 2006 WL 573905, at *1 (N. D. Ill. Mar. 6, 2006). Tip credits are treated identically under both the Illinois Minimum Wage Act and the federal Fair Labor Standards Act, and so cases on the requirements for a tip credit under the FLSA are also relevant to the requirements of the Illinois Minimum Wage Act. *See Morgan v. SpeakEasy, LLC*, 625 F. Supp. 2d 632, 650 (N.D. Ill. 2007) ("Courts have held that the IMWL parallels the FLSA, and that the same analysis generally applies to both statutes.").

J. Alexander's argues that Williams-Green's only evidence that it was not entitled to take a tip credit, and therefore failed to pay her the full minimum wage, are alleged statements by managers that J. Alexander's retained a portion of the tip pool. As noted above, an employer cannot take a tip credit if it retains any portion of its employees' tips and, instead, must pay its employees the full minimum wage. *See* 820 Ill. Comp. Stat. 1-5/4(c); *Driver v. Appleillinois, LLC*, 265 F.R.D. 293, 307 (N.D. Ill. Mar. 2, 2010) ("If the employer retains any of the tips, the tip pool is deemed invalid, and the employer loses the tip credit."). J. Alexander's contends that Williams-Green's "general assertions, without specific factual support, that she was told by her managers each time she asked about tip share distribution that the restaurant retained one-third, would not allow a reasonable jury to conclude that J. Alexander's operated an improper tip pool." J. Alexander's Memorandum [86-1] at 6. Yet if the managers made the statements that Williams-Green has testified they made, the statements could constitute admissions by J. Alexander's because, according to J. Alexander's undisputed statements of fact, distributing the tip pool fell within the scope of the responsibilities of a manager. *See* Joint Statement of Undisputed Facts and Additional Facts [87-1] ¶ 114. Because the alleged statements concerned matters within the scope of the managers' employment, the alleged statements are potentially admissions by J. Alexander's that it retained a portion of the tip pool. *See Simple v. Walgreen Co.*, 511 F.3d 668, 672 (7th Cir. 2007). Such direct evidence is sufficient to withstand J. Alexander's motion for summary judgment on the issue of the propriety of its tip pool and its entitlement to a tip credit.

Therefore, J. Alexander's motion for summary judgment on the issue of the tip credit is denied.

**B. Off-the-Clock Work**

Next, J. Alexander's seeks summary judgment on Williams-Green's claim that she was never paid for work she performed off-the-clock. This claim comes not from the complaint but, rather, statements Williams-Green made during her deposition. The only state statute she cites in her response to the motion for summary judgment on this claim is the Illinois Minimum Wage Law, so the court will limit its analysis to that statute.

Under the Illinois Minimum Wage Law, an employer must compensate a employee for work "not requested but suffered or permitted." *Ladegaard v. Hard Rock Concrete Cutters, Inc.*, No. 00 CV 5755, 2004 WL 1882449, at *4 (N.D. Ill. Aug. 18, 2004). Work is not considered suffered or permitted unless the employer knew or should have known about it. *Id.*

Williams-Green contends that she performed work prior to her shift and that manager knew she was working off-the-clock. However, her contention is unsupported by the record. According to her own deposition testimony, each time a manager asked her to perform pre-shift work, she first asked to clock-in:

> Q: Okay. So were there any times that they told you to start that you didn't ask to clock in?

**STATEMENT**

A: No.

Q: So each time they asked you to start your side work, you would ask them to clock in?

A: Yes.

Williams-Green Deposition (attached as Tab 3 to Appendix to Parties' Joint Statements of Fact [88-1]) at 109. She also testified that her managers would either direct her to clock in or they would offer to compensate her with lunch:

Q: Did you ever say to them, I'm not clocked in yet?

A: Yes.

Q: Okay. And what would they say to you?

A: And sometimes they would say, Well, go ahead and clock in, don't worry about it, we'll take care of it. Or they would say, We'll just buy you lunch.

*Id.* at 108-09. Thus, according to her own account of events, when asked to perform pre-shift work, Williams-Green always asked to clock in, to which a manager responded by either telling her to clock in or by offering to compensate her with lunch. Nowhere did Williams-Green testify that a manager knew that any of the work she performed was done off-the-clock. As a result, she has no evidence that J. Alexander's knew that she was performing work for which she was not being compensated. *See Bjornson v. Daido Metal U.S.A., Inc.*, 12 F. Supp. 2d 837, 842 (N.D. Ill. 1998) (employer is liable only if it knew that plaintiff performed work for which he was not compensated).

Accordingly, J. Alexander's motion for summary judgment on her off-the-clock claim is granted.

**C. Overtime Pay**

The parties agree that J. Alexander's has paid Williams-Green and other similarly-situated employees the overtime wages they were due plus interest. As a result, J. Alexander's contends Williams-Green's claim under the Illinois Wage Payment and Collection Act for overtime pay has become moot.

Once a party has received the relief it sought, its claim becomes moot and a federal court lacks subject-matter jurisdiction over it. *See Lakovich v. Verizon Ltd. Plan*, — F.3d —, 2011 WL 3010497, at *3 (7th Cir. July 22, 2011) ("Federal courts lack subject matter jurisdiction when a case becomes moot"). In her response brief, Williams-Green does not dispute that the overtime claim is moot. Rather, she contends that she is nevertheless entitled to pursue attorneys' fees under the Act. *See* 820 Ill. Comp. Stat. 115/14(a). A claim for attorneys fees is "separate from the merits of the action," and a district court retains jurisdiction to entertain a claims for fees even when the underlying claim has become moot. *See Lakovich*, 2011 WL 3010497, at *3.

Accordingly, Williams-Green's overtime pay claim is dismissed for lack of subject matter jurisdiction, and the motion for summary judgment on that claim is denied as moot. The court expresses no opinion at this

**STATEMENT**

time as to whether Williams-Green is entitled to attorneys' fees on this claim.

## III. WILLIAMS-GREEN'S MOTION FOR SUMMARY JUDGMENT [91-1]

### A. Propriety of the Tip Pool

Having denied J. Alexander's motion for summary judgment on this claim, the court now turns to Williams-Green's argument that she is entitled to summary judgment because J. Alexander's own evidence establishes that it improperly operated the tip pool and, therefore, was not entitled to take a tip credit. In support, she relies upon J. Alexander's summaries of tip pool distributions. As noted above, J. Alexander's director of information systems prepared summaries of sampled pay periods at each of J. Alexander's Illinois restaurants during the period from 2002 through 2010. The summaries detail the tips contributed into the tip pool as well as the tips distributed from the pool. According to the summaries, on occasion the restaurants distributed all of the tips collected, but many times it failed to do so. For instance, during the pay period ending January 22, 2006, the Chicago restaurant collected $3,779.74 from tipped employees, but distributed only $3,775.25, a difference of $24.49. In fact, the Chicago location failed to distribute all of the tips that had been contributed into the tip pool during four of the ten weeks sampled.

Even larger discrepancies were reported at the Northbrook and Oak Brook locations. For instance, during the pay period that ended September 18, 2005, tipped employees at the Northbrook location contributed $2,891.84 to the tip pool, but J. Alexander's distributed only $2,764.53, a difference of $127.31. Similarly, during the pay period that ended April 15, 2007, tipped employees at the Oak Brook location contributed $6,6870.07 to the tip pool, while J. Alexander's distributed just $6,371.14 of that amount. In total, J. Alexander's failed to distribute all of the money it had collected for the tip pool for 7 of the 11 pay periods sampled at the Northbrook location, and for 10 of the 12 pay periods sampled at the Oak Brook location.

Under the Illinois Minimum Wage Act, an employer is entitled to pay an employee 60% of the minimum wage as long as the employee's tips make up the remaining 40% of the minimum wage and that the employer did not retain any of the tips. *See* 820 Ill. Comp. Stat. 105/4(c); *Gillis*, 2006 WL 573905, at *1. The Minimum Wage Act does not prohibit an employer from operating a tip pool, in which tipped employees turn over a portion of their tips to the employer, provided that the employer does not retain any of the tips. *See Morgan v. SpeakEasy, LLC*, 625 F. Supp. 2d 632, 652 (N.D. Ill. 2007). Retention of any portion of the proceeds of a tip pool constitutes impermissible participation in the pool, and the invalidation of the employer's tip credit. *Id.*

The summaries of the tips collected and distributed establishes that, at times, J. Alexander's did not distribute all of the proceeds of the pool. However, the summaries do not explain what happened to the tips that were collected but not distributed. Additionally, J. Alexander's has identified testimony from managers that the restaurant did not retain any portion of the tip pool. *See, e.g.*, Deposition of Corey Miler (attached as Tab 2 to Appendix to Parties' Joint Statement of Undisputed Material Facts and Additional Facts [88-1]) at 71("It [the tip pool proceeds] is given to whoever works as a hosti or service well or a possible food runner in my restaurant that day."); Deposition of Brinker Wolf (attached as Tab 4 to Appendix to Parties' Joint Statement of Undisputed Material Facts and Additional Facts [88-1]) at 109 ("If it's [the tip share] $300.00, we take $300.00 and distribute that $300.00 out correctly to the tip share employees.").

While it is possible that the undistributed tips were retained by J. Alexander's, the summaries do not establish definitively that they were. Thus, the record before the court consists of assertions by Williams-Green that

**STATEMENT**

managers told her the restaurant retained a portion of the tip pool, denials by those managers, and summaries prepared by J. Alexander's that do not fully account for all the tip shares collected. Because of the remaining disputed questions of fact, and because Williams-Green is entitled to summary judgment only if she can show the absence of any material question of fact, her motion for summary judgment on the propriety of the tip pool is denied.

### B. Off-the-Clock Work

As discussed in connection with J. Alexander's motion for summary judgment on this same issue, Williams-Green has failed to identify sufficient evidence that J. Alexander's knew of her off-the-clock work. Because J. Alexander's is entitled to summary judgment on this claim, Williams-Green motion for summary judgment on the claim is denied.

### C. Overtime Pay

As discussed above, the parties agree that J. Alexander's has paid the overtime pay due and, therefore, the overtime claim is moot and dismissed for lack of subject matter jurisdiction. The court expresses no opinion at this time as to whether Williams-Green is entitled to attorneys' fees on this claim.

## IV. MOTION FOR CLASS CERTIFICATION [48-1]

Williams-Green seeks certification of a class of J. Alexander's employees who participated in its allegedly invalid tip pool, and whom she alleges were improperly paid a sub-minimum wage in violation of the Illinois Minimum Wage Law and the Illinois Wage Payment and Collection Act. To obtain class certification, Williams-Green must demonstrate that the proposed class meets the requirements of Federal Rule of Civil Procedure 23. *Siegel v. Shell Oil Co.,* 612 F.3d 932, 935 (7th Cir. 2010). Under Rule 23, one or more members of a class may sue on behalf of all members of the class if:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). If those four requirements are met, the case may proceed as a class action if the potential class meets one of the three provisions of Rule 23(b). *Siegel,* 612 F.3d at 935. Williams-Green contends that the proposed class satisfies the third provision, which reads as follows:

> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the

**STATEMENT**

controversy. The matters pertinent to these findings include:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). The burden falls on the plaintiff to demonstrate that the requirements of Rule 23 have been satisfied. *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008). The court has broad discretion to determine whether the movant has satisfied the requirements for class certification. *See Ervin v. OS Restaurant Services, Inc.*, 632 F.3d 971, 976 (7th Cir. 2011). The requirements of Rule 23 should be liberally construed to support the policy favoring the maintenance of class actions. *See Brown v. Yellow Transportation, Inc.*, No. 08 CV 5908, 2011 WL 1838741, at *2 (N.D. Ill. May 11, 2011). In making its determination, the court may look beyond the pleadings. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551-52 (2011) ("sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question") (internal quotation marks and citation omitted).

The defendants contend that class certification must be denied for two reasons: (1) the proposed class cannot satisfy the commonality requirement of Rule 23(a)(2), and (2) the proposed class cannot satisfy the predominance and superiority requirements of Rule 23(b)(3).

**A. Commonality**

J. Alexander's argues that Williams-Green's motion for class certification should be denied because she cannot establish that "there are questions of law or fact common to the class" as required under Rule 23(a)(2). Commonality is established with evidence that the claims arise from a "common nucleus of operative fact" such as where a defendant "engaged in standardized conduct towards members of the proposed class." *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998).

Williams-Green has satisfied the showing required under Rule 23(a)(2). She has alleged standardized conduct by J. Alexander's, namely, its retention of a portion of the tip pool in violation of Illinois law. In addition, she has identified several managers who reportedly told her that J. Alexander's retained a portion of the tip pool. If proved, J. Alexander's was not entitled to the tip credit, and members of the class should have been paid the full minimum wage. While the damages each proposed class member suffered would vary with the number of hours they worked, the fact that damages may need to be individually calculated does not defeat commonality. *See George v. Kraft Foods Global, Inc.*, 251 F.R.D. 338, 347 (N.D. Ill. 2008).

J. Alexander's argues that, much like the situation recently addressed by the U.S. Supreme Court in *Wal-Mart Stores, Inc. v. Dukes*, Williams-Green's allegations involved isolated incidences of improper

**STATEMENT**

conduct by individual managers rather than uniform conduct undertaken in furtherance of company-wide policy. *See Wal-Mart Stores*, 131 S. Ct. at 2554. In support, it cites *Driver v. AppleIllinois, LLC*, 265 F.R.D. 293, 308 (N.D. Ill. 2010), where the court denied class certification because of the "absence of any indication of a policy or practice of AppleIllinois of improperly using tip pool proceeds (as opposed to the improper actions of some store managers)." J. Alexander's contends that, like in *Driver*, its policy required the tip pool to be distributed solely to employees, and that, even if Williams-Green's allegations are proved true, she has identified only isolated incidents of improper conduct by individual managers rather than the type of standardized conduct required to establish commonality.

However, unlike the plaintiff in *Driver*, Williams-Green has identified evidence to support her allegations of a widespread practice. For instance, managers purportedly told her that J. Alexander's retains a portion of the tip pool. In addition, J. Alexander's own financial summaries show that all three of its Illinois locations repeatedly (though not consistently) collected more in tip shares than they redistributed. Therefore, the record in this case has raised a disputed question of material fact whether J. Alexander's improperly retained tip pool proceeds, unlike the record in *Driver* in which there was an absence of any such evidence.

Acordingly, Williams-Green has demonstrated that her claims regarding the operation of the tip pool arise from a common nucleus of fact based upon standardized conduct and, therefore, has satisfied the commonality requirement of Rule 23(a)(2).

**B. Predominance and Superiority**

J. Alexander's also argues that class certification should be denied because Williams-Green cannot establish two of the requirement elements under Rule 23(b): predominance and superiority.

**1. Predominance**

The Rule 23(b) predominance requirement looks to whether the proposed class is "sufficiently cohesive" to warrant "adjudication by representation." *Wal-Mart Stores*, 131 S. Ct. at 2566 (internal quotation marks and citation omitted). Such an inquiry requires the court to identify "the substantive issues that will control the outcome, assess[] which issues will predominate, and then determin[e] whether the issues are common to the class." *Hyderi v. Washington Mut. Bank, FA*, 235 F.R.D. 390, 398 (N. D. Ill. 2006). J. Alexander's argues that Williams-Green cannot establish predominance because she has "failed to show any standardized conduct or policy that applied to all tipped employees and thus individualized inquiry into the merits of each employee's claims will be necessary." Response [58-1] at 8. However, as discussed in the previous section on commonality, the record contains evidence that managers allegedly told Williams-Green that J. Alexander's retains a portion of the tip pool, and J. Alexander's own summaries show that tip shares were not always fully redistributed.

Contrary to J. Alexander's contention, Williams-Green has satisfied the predominance requirement because the controlling substantive issue is the propriety of J. Alexander's tip pool. If J. Alexander's operated an improper tip pool, then liability will be established as to each proposed class member. Accordingly, Williams-Green has established that the predominate issue is common to each member of the proposed class.

**2. Superiority**

Second, J. Alexander's briefly argues that Williams-Green cannot establish that class certification is the

**STATEMENT**

superior method of resolving this dispute because she failed to establish predominance. However, as J. Alexander's argument about predominance failed, so too does its argument about superiority. Because this case "presents issues that are shared by members of the proposed class[] . . . [c]lass certification is more efficient than individual suits to deal with these common questions." *Schmidt v. Smith & Wollensky, LLC*, 268 F.R.D. 323, 330 (N. D. Ill. 2010).

**C. Class Is Certified**

In summary, J. Alexander's arguments that class certification is inappropriate because Williams-Green cannot satisfy the requirements of demonstrating commonality, predominance of common issues, and the superiority of adjusting the controversy as a class action are unavailing. Because it has identified no other basis for denying Williams-Green's motion, the motion for class certification is granted. The court adopts the following class definition as proposed by Williams-Green:

> All persons who worked for Defendant in Illinois as hourly employees at any time between August 16, 2002, and the present who participated in one or more tip pools operated by Defendant.

Pursuant to Federal Rule of Civil Procedure 23(c)(1)(B) and (g), Williams-Green's counsel, James X. Bormes of the Law Office of James X. Bormes, and Catherine P. Sons of Converse & Brown LLC, are appointed as class counsel.

**CONCLUSION**

For the reasons stated, Williams-Green's motion for class certification [48-1] is granted, the class is defined as stated above, and James X. Bormes and Catherine P. Sons are appointed class counsel. J. Alexander's motion for summary judgment [85-1] is granted in part and denied in part, while Williams-Green's motion for summary judgment [91-1] is denied.

rs/cpb